**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SHAUNA MONE'T MCWILLIAMS ) | Case No. 21-31470-KLP |
| ) | Chapter 13 |
| Debtor ) | |

## MOTION TO SELL REAL ESTATE

COMES NOW, the Debtor, by counsel, and as and for Debtor's Motion to Sell Real Estate, states as follows:

1. The Debtor filed this case under Chapter 13 of the U.S. Bankruptcy Code on May 3, 2021.

2. Truist Bank is a secured creditor which holds a first mortgage on the property known as 3818 Beechtree Ct., North Chesterfield, VA 23234, more particularly known as

> ALL THAT CERTAIN LOT, PIECE OR PARCEL WITH IMPROVEMENTS THEREON AND APPURTENANCES THERETO BELONGING, LYING, BEING AND SITUATE IN COUNTY OF CHESTERFIELD, VIRGINIA, AND SHOWN AND DESIGNATED AS LOT 2, BLOCK B, SECTION 1, ON THE SUBDIVISION PLAT OF BELFAIR TOWNHOUSES, SECTION 1, RECORDED IN THE CLERK'S OFFICE, CIRCUIT COURT, CHESTERFIELD COUNTY, VIRGINIA, IN PLAT BOOK 20, PAGES 1 THROUGH 8, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF THE PROPERTY.

(the "Property").

3. The approximate payoff balance on the note secured by said mortgage is $91,000.00. The tax assessed value of the Property is $122,800.00.

James E. Kane (VSB #30081)
KANE & PAPA, P.C.
1313 East Cary Street
Richmond, VA  23219
(804) 225-9500 (phone)
(804) 225-9598 (fax)
*Counsel for Debtor*

4. Debtor has entered into a contract ("Contract") for the sale of the Property to Melissa Pate for $187,000.00, which, upon closing of the same, will result in Truist Bank releasing its deed of trust against the Property. A copy of said Contract is attached hereto collectively as Exhibit "A" and incorporated herein by this reference.

5. The amount of the sale or loan proceeds to be applied to the Debtor's obligations under the confirmed plan is $2,500.00, which will not result in full payment of all allowed claims.

6. The approximate amount of sales proceeds to be paid to the Debtor is $74,800.00.

7. Debtor is in the process of purchasing another home for Debtor and Debtor's 4-year-old son, and needs the proceeds to pay for moving expenses and down payment for the purchase of the new home.

8. On December 15, 2021, or as soon thereafter as may be practicable, Debtor intends to sell Debtor's interest in the Property in accordance with the terms of the contract.

WHEREFORE, the Debtor requests that the Court enter an Order authorizing the sale of the Property in accordance with the terms of the Contract and for such other relief as the Court may deem appropriate

Dated: November 24, 2021                                SHAUNA MONE'T MCWILLIAMS

                                                        By: /s/ James E. Kane
                                                               Counsel

James E. Kane (VSB #30081)
KANE & PAPA, P.C.
1313 East Cary Street
Richmond, VA  23219
(804) 225-9500 (phone)
(804) 225-9598 (fax)
*Counsel for Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties registered to receive notice thereof, and I mailed a true and exact copy to the parties on the list attached hereto.

/s/ James E. Kane
Counsel for Debtor

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SHAUNA MONE'T MCWILLIAMS ) | Case No. 21-31470-KLP |
| ) | Chapter 13 |
| Debtor ) | |

**NOTICE OF MOTION AND HEARING**

The above Debtor has filed a Motion to Sell Real Estate with the Court.

Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one).

The property Debtor is requesting to sell Debtor's primary residence known as 3818 Beechtree Ct., North Chesterfield, VA 23234 to Melissa Pate for $187,000.00.  The property is currently secured by a first deed of trust with an approximate balance of $91,000.00 which balance is to be paid in full with the proceeds from the sale of the property.  The amount of the proceeds to be applied to the Debtor's obligations under the confirmed plan in this case is $2,500.00, which will not result in full payment of all allowed claims in this case.  The amount of the proceeds from the sale to be paid to the Debtor is approximately $74,800.00 to be used for Debtor's moving expenses and the purchase of a new home.

If you do not want the court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, then within twenty-one (21) days from the date of this Notice, you or your attorney must:

- File with the court, at the address shown below, a written request for a hearing [or written response pursuant to Local Bankruptcy Rule 9013-1(H)].  If you mail your request for a hearing (or response) to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above, to:

    Clerk of Court
    United States Bankruptcy Court
    701 East Broad Street
    Richmond, VA  23219

You must also mail a copy to:

> James E. Kane, Esquire
> KANE & PAPA, P.C.
> 1313 East Cary Street
> Richmond, Virginia 23219

- Attend a hearing scheduled for **December 8, 2021 at 10:00 a.m. at U.S. Bankruptcy Court, 701 East Broad Street, Room 5100, Richmond, VA 23219**. <u>If no timely response has been filed opposing the relief requested, the court may grant the relief without holding a hearing</u>.

- **REMOTE HEARING INFORMATION**:

Due to the COVID−19 public health emergency, no in-person hearings are being held.

This hearing will take place remotely through Zoom on the date and time scheduled herein.

To appear at the hearing, you must send, by email, a completed request form (the "Zoom Request Form"), which is available on the Court's internet website at <u>www.vaeb.courts.gov</u>, on the page titled, "Temporary Emergency Provisions Regarding ZoomGov Remote Proceeding Access Information." Email your completed Zoom Request Form to the email address listed for the Judge assigned to the case. Following receipt of your Zoom Request Form, Court staff will respond to the email address from which the request was submitted with additional information on how to participate through Zoom.

***The email address shall be used only to submit Zoom Request Forms. No other matters or requests will be considered by Court staff, and under no circumstances will any such matters or requests be brought to the Judge's attention. Failure to comply with these instructions may result in appropriate action, including but not limited to the imposition of sanctions.

*** **PLEASE NOTE: You MUST submit the Zoom Request Form no later than two (2) business days prior to this hearing. Any documentary evidence the parties wish to present at the hearing must be filed with the Court in advance of the hearing.**
If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

Dated: November 24, 2021            SHAUNA MONE'T MCWILLIAMS

           By:  /s/ James E. Kane
                     Counsel

James E. Kane (VSB #30081)
KANE & PAPA, P.C.
1313 East Cary Street
Richmond, VA  23219
(804) 225-9500 (phone)
(804) 225-9598 (fax)
*Counsel for Debtor*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties registered to receive notice thereof, and I mailed a true and exact copy to the parties on the list attached hereto.

           /s/ James E. Kane
           Counsel for Debtor

 

**Central Virginia Regional MLS**
**Purchase Agreement**

This is a legally binding document for the purchase of real property. If not understood, seek competent advice before signing.
(Paragraphs marked with an asterisk * require a blank to be filled in or checked.)

*This Purchase Agreement (the "Agreement") is dated __November 19__, 20_21_, between __Shauna Mcwilliams__ ("Seller") and __Melissa Pate__ ("Purchaser").
The parties acknowledge __Keller Williams Realty__ ("Listing Broker") represents Seller, and __Hometown Realty__ ("Selling Broker") represents Purchaser.

**\* 1. REAL PROPERTY:** Purchaser agrees to buy and Seller agrees to sell the land, all improvements thereon, and appurtenances thereto belonging, located in the City/County of __Chesterfield__, Virginia, and described as (legal description): __BELFAIR TWHS L 2 BK B SEC 1__, Tax Parcel # __768-69-29-42-100-000__, and more commonly known as: __3818 Beechtree CT              NorthChesterfield VA    23234__ together with the items of personal property described in paragraph 2 (the "Property").

**\*2. PERSONAL PROPERTY INCLUDED:** Included with the sale of the above real estate (if located within said Property at the time of signing this Agreement, unless otherwise noted) are the shades, plantation shutters, blinds, curtain and drapery rods, screens and screen doors, storm windows and doors, light fixtures, wall to wall carpeting, garbage disposal, range, oven, dishwasher, laundry tubs, attic fan, smoke and heat detectors, awnings, electrical wiring connections for appliances, ceiling fan(s), garage door opener(s) and remotes, mailbox and post, outbuildings and sheds, gas logs, fireplace inserts and all other items attached to the real estate and being a part thereof, including all shrubbery and plantings on the Property. Also included are the following items:

**\*3. ADDENDA:** The following addenda are made a part of this Agreement:
☐ Lead-Based Paint Disclosure (required on all pre-1978 homes)   ☐ Right of First Refusal   ☐ Short Sale Addendum
☒ "AS IS" Addendum         ☐ Other _____

**\*4. PURCHASE PRICE:** The Purchase Price of the Property is __One Hundred Eighty-Seven Thousand__ Dollars ($__187,000.00__), which shall be paid to Seller at settlement, subject to the pro-rations described herein and/or from the following sources **[check all applicable box(es)]**:
☐ This sale is **not** subject to financing. Purchaser shall pay all cash at closing by bank certified funds or bank wire.
☒ This sale **is** subject to financing. This is subject to Purchaser being able to obtain or assume a **[select loan type]**:

☐ Conventional; ☒ FHA; ☐ VA; ☐ VHDA or ☐ other _____ loan in the principal amount of ____% of the Purchase Price OR $_____ ("Loan Amount"), secured by a first deed of trust lien on the Property bearing interest at a **[select one box]**:
  ☐ fixed rate not exceeding ____% per year  **OR**
  ☐ at an adjustable rate with an initial rate not to exceed ____% per year and a maximum rate not to exceed ____% during the term of the loan  **OR**
  ☐ at the prevailing rate of interest at the time of settlement.

The loan shall be amortized for a term of __30__ years and shall require not more than a total of __0__ discount and origination points. (For loan assumption, the balance set forth above is approximate. The principal amount to be assumed will be the outstanding principal balance on the date of settlement. Purchaser shall assume all obligations of Seller under such loan with the exception of past due charges for which Seller shall be liable). Purchaser shall pay the balance of the Purchase Price at settlement, less any deposit, loan amount and/or other credits set forth in this Agreement. Nothing in this Agreement prohibits Purchaser from seeking financing other than as specified above so long as settlement is not delayed and there is no cost to Seller. Purchaser's failure to obtain such alternative financing does not relieve Purchaser from the obligations to obtain the financing specified above.

☐ Seller agrees to pay at settlement (to be reflected on the settlement statement) the sum of $__0.00__ towards Purchaser's closing costs, prepaids, discount points and loan expenses.

This form was produced by Cameo McFarlin. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

TRANSACTIONS
TransactionDesk Edition

AuthentIsign ID: DAB68F61-B34B-4620-BDCB-EA6E510FDB1B

**\*5. APPRAISAL:** This sale **[select one]:** ☒ is  OR  ☐ is not further subject to the Property's appraised value equaling or exceeding the Purchase Price, which value shall be determined by an appraiser selected by Purchaser's lender (if a cash purchase, the appraiser shall be selected by Purchaser). **The appraisal shall be ordered within fifteen (15) days of the Date of Ratification. It shall be the responsibility of Purchaser to advise Purchaser's lender of this requirement.** If the appraisal is not ordered within 15 days of the Date of Ratification, then Seller may terminate this Agreement by written notice to Purchaser and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. If the appraisal is ordered after the 15 day period but Seller has not yet terminated this Agreement, then Seller's right to terminate this Agreement for said purpose is waived.

Regarding the appraisal, if the Purchase Price exceeds the appraised value, Purchaser shall either: (i) proceed with consummation of this Agreement without regard to the amount of the appraised value, or (ii) make a written request to Seller within five (5) days of receipt of the appraisal for a reduction in the Purchase Price so long as the reduced Purchase Price is not lower than the appraised value, and provide Seller a copy of the appraisal (or lender verification of the appraised value). Seller shall then have five (5) days to respond to Purchaser's request for a reduction in the Purchase Price (the "Response Deadline"). If the parties are unable to agree in writing as to a Purchase Price within five (5) days following the Response Deadline, then either Purchaser or Seller may terminate this Agreement by written notice to the other party, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. For purposes of this paragraph, Purchaser is deemed to have received a copy of the appraisal when Purchaser is notified in writing of the appraised value of the Property. If Purchaser does not request a reduction in the Purchase Price within five (5) days after receipt of the appraisal, then this condition shall be deemed waived by Purchaser.

**6. FINANCING:** If this Agreement is conditioned upon Purchaser obtaining financing, Purchaser shall make written application for such loan within seven (7) days after the Date of Ratification (as defined in Paragraph 27) and shall make diligent effort to secure a written loan commitment no later than 5:00 p.m. on the settlement date set forth in Paragraph 9. If, at the time of such loan application, Purchaser chooses not to lock-in the rate and/or points that meet or exceed the requirements set forth in Paragraph 4, Purchaser waives such rate and point contingency. If this Agreement is not conditioned upon Purchaser obtaining financing, Purchaser shall provide Seller with written verification from a third-party in possession of Purchaser's assets within seven (7) days after the Date of Ratification that Purchaser has sufficient assets to pay the balance of the Purchase Price at settlement. If Purchaser fails to comply with any of the provisions of this paragraph or fails to obtain a written loan commitment by 5:00 p.m. on the settlement date, then Seller may terminate this Agreement by written notice to Purchaser, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder. As used in this paragraph, "diligent effort" shall mean that Purchaser has provided all information or documentation requested by a lender within seven (7) days of each such request and paid all costs associated with such loan application, including but not limited to, application fees, credit reports and appraisal(s). Purchaser authorizes the lender to: (i) disclose to the Listing Broker and Selling Broker information about the progress of Purchaser's loan application and approval, including whether Purchaser has complied with the lender's requests and paid all costs associated with such application; and (ii) furnish a copy of Purchaser's loan estimate(s) and closing disclosure(s) to the Selling Broker. If, after diligent effort, Purchaser is unable to obtain financing, then this Agreement shall terminate, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

**7. WIRE FRAUD ALERT:** Criminals are hacking email accounts of real estate agents, settlement attorneys/agents and others resulting in fraudulent wire instructions being sent to divert Seller or Purchaser's funds to the criminal's account. These emails look legitimate, but they are not. *Purchaser and Seller are advised not to wire any funds without personally speaking with the intended recipient of the wire to confirm the bank routing number and account number.*

**\*8. DEPOSIT:** Purchaser shall make a deposit of $ __1,500.00__ to be held by _____**Hometown Realty**_____ (the "Escrow Agent") in the form of: ☒ check  ☐ cash  ☐ other _____ (the "Deposit"). Purchaser **[select one]:** ☐ has paid the Deposit to the Escrow Agent **OR** ☒ will pay the Deposit to the Escrow Agent within __5__ days (the "Extended Deposit Date") after the Date of Ratification. If Purchaser fails to pay the Deposit as set forth herein, then Purchaser shall be in breach of this Agreement. At Seller's option and in lieu of all other remedies set forth in this Agreement, Seller may terminate this Agreement by written notice to Purchaser and neither party shall have any further obligation hereunder. If the Escrow Agent is a Virginia Real Estate Board ("VREB") licensee, the parties direct the Escrow Agent to place the Deposit in an escrow account by the end of the fifth business banking day following the latter of: (i) ratification and delivery of this Agreement as defined in Paragraph 27, or (ii) the Extended Deposit Date. If the Escrow Agent is not a VREB licensee, the parties direct the Escrow Agent to place the Deposit in an escrow account in conformance with applicable Federal or Virginia law and regulations. The Deposit may be held in an interest bearing

This form was produced by Cameo McFarlin. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

TRANSACTIONS
TransactionDesk Edition

account and the parties waive any claim to interest resulting from such Deposit. The Deposit shall not be released by the Escrow Agent until (i) credited toward the purchase price at settlement; (ii) Seller and Purchaser agree in writing as to its disposition, (iii) a court of competent jurisdiction orders a disbursement of the funds, or (iv) disbursed in such manner as authorized by the terms of this Agreement subject to Virginia law and/or VREB Regulations. Seller and Purchaser agree that Escrow Agent shall have no liability to any party for disbursing the Deposit in accordance with this paragraph, except in the event of Escrow Agent's negligence or willful misconduct.

If the Property is foreclosed upon while this Agreement is pending, the terms of Virginia Code Section 54.1-2108.1 shall apply to the disbursement of the Deposit. The foreclosure shall be deemed a termination of this Agreement by Seller and, absent any default by Purchaser, the Deposit shall be disbursed to Purchaser.

**\*9. SETTLEMENT; POSSESSION:** Settlement shall be made at the offices of __Appomattox Title Company INC.__ on or before **[select one box and insert closing date]**:

☐   __December    17th__, 20__21__, or a reasonable time thereafter if the Purchaser or Seller is making diligent effort to satisfy any contingencies contained in this Agreement.
**OR**

☐ _____, 20___, and subject to Seller's right to cure any title defects as set forth in Paragraph 24B, if settlement does not occur within ten (10) days following such date, a party who is ready, willing and able to close under the terms of this Agreement may terminate this Agreement by written notice to the other party, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

**Possession of the Property shall be given at settlement, unless otherwise agreed in writing by the parties.** Failure to check one box above shall not invalidate this Agreement. The settlement date shall be as inserted above. Seller and Purchaser authorize and direct the settlement agent to provide a copy of Purchaser's closing disclosure (if Purchaser obtains lender financing), settlement statement and/or disbursement summary for this transaction to the Seller, Purchaser, Listing Broker and Selling Broker.

**\*10. OCCUPANCY DISCLOSURE:** Purchaser intends to **[select one]:** ☒ occupy **OR** ☐ not occupy the Property as a principal residence.

**\*11. RESIDENTIAL PROPERTY DISCLOSURE:** Seller represents the Property **[select one]:** ☒ is **OR** ☐ is not subject to the Virginia Residential Property Disclosure Act, Sections 55.1-700 et. seq. of the Code of Virginia, which requires the Seller of certain residential property to furnish the Purchaser with a Residential Property Disclosure Statement. Property Disclosure **[select one]:** ☒ is **OR** ☐ is not attached. (Attachment does not become part of this Agreement.)

**12. FAIR HOUSING DISCLOSURE:** All offers shall be presented and considered without regard to race, color, religion, sex, disability, source of funds, familial status, elderliness, national origin, sexual orientation, gender identity, or status as a veteran, as well as all classes protected by the laws of the United States, the Commonwealth of Virginia and applicable local jurisdiction.

**\*13. PROPERTY OWNERS' ASSOCIATION DISCLOSURE:** The Seller represents that the Property **[select one]:** ☒ is **OR** ☐ is not located within a development which is subject to the Virginia Property Owners' Association Act (Sections 55.1-1800 et. seq. of the Code of Virginia) (the "Act"). If the Property is within such a development, the Act requires the Seller to obtain from the property owners' association an association disclosure packet and provide it to the Purchaser, or Purchaser's authorized agent. The information contained in the association disclosure packet shall be current as of the specified date on the disclosure packet. The Purchaser may cancel this Agreement (a) within 3 days after the date of this Agreement, if on or before the date that the Purchaser signs this Agreement, the Purchaser receives the association disclosure packet, is notified that the association disclosure packet is not available, or receives an association disclosure packet that is not in conformity with the provisions of § 55.1-1809 ; (b) within 3 days after receiving the association disclosure packet, if the association disclosure packet, notice that the association disclosure packet will not be available, or an association disclosure packet that is not in conformity with the provisions of § 55.1-1809 is hand delivered, delivered by electronic means or delivered by a commercial overnight delivery service or the United States Postal Service, and a receipt obtained; or (c) within 6 days after the postmark date if the association disclosure packet or notice that the association disclosure packet will not be available is sent to the Purchaser by United States mail. The Purchaser may also cancel this Agreement at any time prior to settlement if the Purchaser has not been notified that the association disclosure packet will not be available and the association disclosure packet is not delivered to the Purchaser. Notice of cancellation shall be provided to the Seller (owner) or his agent by one of the following methods: (i) hand delivery; (ii) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which

This form was produced by Cameo McFarlin. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

TRANSACTIONS
TransactionDesk Edition

may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (iii) electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery; or (iv) overnight delivery using a commercial service or the United States Postal Service. In the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the Seller shall cause any deposit to be returned promptly to the Purchaser, but not later than thirty days from the date of cancellation. Seller shall provide written instructions to the Association for delivery of the disclosure packet to Purchaser or Purchaser's authorized agent. The right to receive the association disclosure packet and to cancel this Agreement terminates at settlement. If the Purchaser has received the association disclosure packet, the Purchaser has a right, at Purchaser's sole expense, to request an update of such disclosure packet from the property owners' association in accordance with subsection G of Section 55.1-1810 or subsection D of Section 55.1-1811 as appropriate. A request for an updated disclosure packet does not extend the cancellation periods set forth above.

**\*14. CONDOMINIUM DISCLOSURE:** The Seller represents that the Property **[select one]:**  ☐ is **OR** ☒ is not a condominium resale, which is subject to the Virginia Condominium Act (Section 55.1-1900 et seq. of the Code of Virginia) (the "Condominium Act"). If the Property is a condominium resale, the Condominium Act requires the Seller to obtain from the unit owners' association a resale certificate and provide it to the Purchaser or Purchaser's authorized agent. The information contained in the resale certificate shall be current as of the specified date on the resale certificate. The Purchaser may cancel this Agreement (a) within 3 days after the date of this Agreement, if on or before the date that the Purchaser signs this Agreement, the Purchaser receives the resale certificate, is notified that the resale certificate is not available, or receives a resale certificate that is not in conformity with the provisions of § 55.1-1990; (b) within 3 days after receiving the resale certificate, notice that the resale certificate will not be available, or a resale certificate that does not contain the information required by § 55.1-1990 to be included in the resale certificate is hand delivered, delivered by electronic means or delivered by a commercial overnight delivery service or the United States Postal Service, and a receipt obtained; or (c) within 6 days after the postmark date if the resale certificate is sent to the Purchaser by United States mail. Notice of cancellation shall be provided to the Seller (owner) or his agent by one of the following methods: (i) hand delivery; (ii) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (iii) electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery; or (iv) overnight delivery using a commercial service or the United States Postal Service. In the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the Seller shall cause any deposit to be returned promptly to the Purchaser, but not later than thirty days from the date of cancellation. Seller shall provide written instructions to the Association for the delivery of the resale certificate to Purchaser or Purchaser's authorized agent. The right to receive the resale certificate and to cancel this Agreement terminates at settlement. If the Purchaser has received the resale certificate, the Purchaser has a right, at Purchaser's sole expense, to request from the unit owners' association a resale certificate update or financial update in accordance with subsection G of Section 55.1-1992. A request for an updated resale certificate does not extend the cancellation periods set forth above.

**15. OWNERS' ASSOCIATION REPAIRS:** If a disclosure packet, resale certificate or inspection report from a Property or Condominium Owners' Association indicates the Property is not in compliance with the Association's governing documents, then Purchaser may request in writing within five (5) days from receipt of any such disclosure packet, resale certificate or inspection report that Seller, at Seller's expense, make any repairs, perform any maintenance or take any corrective action required to conform the Property to the Association's requirements prior to settlement. If any such repairs, maintenance or corrective action is not performed prior to settlement, then Purchaser may terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. If Purchaser does not make a written request to Seller within five (5) days after receipt of the disclosure packet, resale certificate or inspection report containing such non-compliance notice, then Purchaser's right to make such request to Seller or to terminate this Agreement shall be deemed waived.

**\*16. PROPERTY INSPECTION [select one]:**

☒ Purchaser waives a property inspection of the Property.
   **OR**
☐ Seller hereby grants to Purchaser the right to have the Property inspected by a licensed home inspector or other person(s) selected by Purchaser at Purchaser's expense and to request repair of defects revealed and/or a Seller paid closing cost credit to Purchaser (**Purchaser's requested repairs and Seller paid closing cost credit shall be**

CVR 335    Page 4 of 10    Revised 7/2021

This form was produced by Cameo McFarlin. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.


collectively referred to herein as the "**Repair Request**"). Inspections may include, but are not limited to, all structural and building components and systems, radon gas, underground storage tanks, soil condition, environmental testing and engineering studies. The term "***defects***" as used in this paragraph 16 shall mean *(i) **a condition which impairs the normal stability, safety or use of any improvements (buildings) on the Property, or (ii) damage to any part of the improvements, but shall exclude any cosmetic flaws, antiquated systems or grandfathered components that are in working order but would not comply with current building code if constructed or installed today.*** If a system or component is near, at or beyond its projected life expectancy but is properly functioning, then such system or component will not be deemed a defect as defined herein.

Purchaser shall provide Seller with all inspection reports, cost of repairs and Purchaser's written Repair Request no later than **[select one]:** ☐ ___ days after the Date of Ratification **OR** ☐_____ (a.m./p.m.) on _____, 20___ (the "Inspection Deadline). If no box is checked, the Inspection Deadline shall be ten (10) days after the Date of Ratification. In the Repair Request, Purchaser reserves the right to request certain repairs be performed by a contractor currently licensed by the Virginia Board of Contractors, **but shall not request Seller to perform any inspections of the Property**. If Purchaser does not submit to Seller all inspection reports, cost of repairs and the Repair Request by the Inspection Deadline, then Purchaser waives the right to request repairs and/or a Seller paid closing cost credit, agrees that the present condition of the Property is satisfactory, and will proceed to settlement in accordance with the Purchase Agreement. Seller shall respond in writing to Purchaser's Repair Request within seven (7) days of its receipt (the "Negotiation Period"). If Seller agrees in writing to accept such Repair Request, then the parties shall proceed to settlement. If Seller does not respond in writing within the Negotiation Period, then Seller shall be deemed to have rejected Purchaser's Repair Request.

If Purchaser's Repair Request is not accepted by Seller, then the parties may continue to negotiate the terms of the Repair Request during the Negotiation Period. Once a party rejects an offer or presents a counteroffer to the other party, then all prior offers and counteroffers made by either party regarding the Repair Request shall be deemed rejected so that only one Repair Request offer or counteroffer at a time shall be considered. Seller may not require Purchaser to accept a Seller paid closing cost credit to Purchaser in lieu of repairs requested by Purchaser. Further, no party may unilaterally terminate this Agreement during the Negotiation Period, except pursuant to the optional paragraph below.

If, by 5:00 p.m. on the seventh (7th) day of the Negotiation Period, no final agreement is reached as to the Repair Request, then Purchaser shall have until 5:00 p.m. on the second (2nd) day after the end of the Negotiation Period to either: (i) terminate this Agreement by written notice to Seller, or (ii) accept in writing Seller's last offer regarding the Repair Request and proceed to settlement. If Purchaser terminates this Agreement or fails to notify Seller of its election within the said two (2) day period, then this Agreement shall terminate, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

All repairs pursuant to Paragraph 16 shall be made in a workmanlike manner prior to settlement or such other time as agreed to by the parties. Unless otherwise agreed to by the parties, Seller shall provide Purchaser with paid receipts for all repairs prior to settlement or if repairs are to be paid from Seller's proceeds, Seller shall provide written invoices to Purchaser and the settlement agent directing disbursement of Seller's proceeds for payment of said invoices.

> OPTIONAL PARAGRAPH: This paragraph **[select one]:** ☐ is **OR** ☒ is not applicable. If no box is checked, then this paragraph is not applicable. If this paragraph is applicable and Purchaser is dissatisfied with their inspection results of the Property, then in lieu of submitting a Repair Request to Seller, Purchaser may instead terminate this Agreement by written notice to Seller prior to the Inspection Deadline; provided however, **if Purchaser submits a Repair Request to Seller, then Purchaser waives their right to terminate this Agreement pursuant to this paragraph**, and agrees to proceed with the negotiation of the Repair Request as set forth above. If Purchaser terminates this Agreement in accordance with this paragraph, then subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

Seller shall have all utilities supplied to all systems prior to the inspection. If Seller fails to have all utilities supplied to all systems prior to Purchaser's inspection, then the expiration of the inspection period set forth above shall be extended until ten (10) days following the date that Purchaser is notified by Seller that all utilities have been supplied to all systems. Purchaser and Seller, their heirs and assigns, hereby jointly and severally release and forever discharge the Listing and Selling Brokers and their real estate licensees in this transaction, from any and all liabilities, obligations, causes or action, claims and demands whatsoever arising out of or in any way connected with any or all work performed, materials furnished or inspections performed in connection with the captioned Property by contractors, suppliers or inspectors hired by them on behalf of the parties to this Agreement. Purchaser and Seller acknowledge that the provisions of this Paragraph 16 are in addition to treatments or repairs made pursuant to Paragraphs 15, 24E, 24F and 24G.

This form was produced by Cameo McFarlin. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.


TRANSACTIONS
TransactionDesk Edition

AuthentiSign ID: DAB68F61-B34B-4620-BDCB-EA6E510FDB1B

**17. DEFAULT:** If either Seller or Purchaser defaults under this Agreement, the defaulting party, in addition to all other remedies available at law or in equity, shall be liable for the brokerage fees set forth in Paragraph 19 and any brokerage fees set forth in Seller's Listing Agreement with the Listing Broker for the Property (which document is hereby incorporated herein by this reference) as if this Agreement and Seller's Listing Agreement had been performed, and for any damages and all expenses incurred by the non-defaulting party, the Listing Broker and the Selling Broker in connection with this transaction and the enforcement of this Agreement and Seller's Listing Agreement, including, without limitation, attorney's fees and court costs. Payment of a real estate broker's fee as the result of a transaction relating to the Property which occurs subsequent to a default under this Agreement, shall not relieve the defaulting party of liability for any brokerage fees due under this Agreement or Seller's Listing Agreement, or for any damages and expenses, including attorney's fees and court costs, incurred by the non-defaulting party, the Listing Broker and the Selling Broker in connection with this transaction.

**18. Choice of Settlement Agent:** Chapter 10 (§ 55.1-1000 et seq.) of Title 55.1 of the Code of Virginia provides that the purchaser or borrower has the right to select the settlement agent to handle the closing of this transaction. The settlement agent's role in closing this transaction involves the coordination of numerous administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the parties. If part of the purchase price is financed, the lender for the purchaser will instruct the settlement agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No settlement agent can provide legal advice to any party to the transaction except a settlement agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the purpose of providing legal services to that party.

**Variation by agreement:** The provisions of Chapter 10 (§ 55.1-1000 et seq.) of Title 55.1 of the Code of Virginia may not be varied by agreement, and rights conferred by this chapter may not be waived. The seller may not require the use of a particular settlement agent as a condition of the sale of the property.

**Escrow, closing, and settlement service guidelines:** The Virginia State Bar issues guidelines to help settlement agents avoid and prevent the unauthorized practice of law in connection with furnishing escrow, settlement or closing services. As a party to a real estate transaction, the purchaser or borrower is entitled to receive a copy of these guidelines from his settlement agent, upon request, in accordance with the provisions of Chapter 10 (§ 55.1-1000 et seq.) of Title 55.1 of the Code of Virginia.

**19. BROKERAGE FEE:** Seller authorizes and directs the settlement agent to disburse to Listing Broker and Selling Broker from the settlement proceeds their respective brokerage fees payable as a result of the sale and settlement set forth under this Agreement. Prior to settlement, Listing Broker and/or Selling Broker shall deliver to the settlement agent a signed written statement setting forth the disbursement instructions for payment of any brokerage fees and any sales incentives payable to each broker.

**\*20. HOME WARRANTY INSURANCE:** Purchaser has been advised of the availability of a one year warranty program and ☒ declines coverage **OR** ☐ elects to purchase the home warranty program. The cost of the _____ home warranty program is $_____ and is to be paid by ☐ Purchaser **OR** ☐ Seller at settlement. The parties acknowledge that Listing and/or Selling Brokers and their respective licensees may receive a fee for each home warranty sold.

**21. RELATED BUSINESS AND SERVICES:** The Listing Broker and Selling Broker may engage in mortgage loan, homeowner's and title insurance, real estate settlement, home warranty and other real estate related businesses and services from which they receive compensation during the course of this transaction, in addition to the real estate brokerage fees.

**22. PURCHASER DISCLOSURE:** Purchaser warrants he/she does not own any real or personal property that must be sold and settled prior to the settlement of this Agreement, except as disclosed in this Agreement.

**\*23. ADDITIONAL TERMS:**

This form was produced by Cameo McFarlin. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

TRANSACTIONS
TransactionDesk Edition

**24. STANDARD PROVISIONS:**

**A. EXPENSE PRORATIONS:** Seller agrees to pay the expense of preparing the deed and the applicable grantors tax, release fees, and any other fees applicable to the grantor by custom. Except as otherwise agreed herein, Purchaser shall pay all expenses incurred by Purchaser in connection with this Agreement, including without limitation, title examination fees, title insurance premiums, survey costs, recording costs and Purchaser's attorney's fees. All taxes, assessments, interest, rent escrow deposits and other ownership fees, if any, shall be prorated as of the date of settlement. In addition to the Purchase Price, Purchaser agrees to pay Seller for all fuel oil and propane/LP gas remaining in any tanks (if applicable) at the prevailing market price as of the date of settlement.

**B. TITLE:** At settlement Seller shall convey the Property to Purchaser by a general warranty deed containing English covenants of title, free of all encumbrances, tenancies, and liens (for taxes or otherwise), but subject to such restrictive covenants and utility easements of record which do not materially and adversely affect the use of the Property for residential purposes or render the title unmarketable. If the Property does not abut a public road, title to the Property must include a recorded easement providing adequate access thereto. In the event this sale is subject to a financing contingency under Paragraph 4, the access to a public road must be acceptable to the lender. If the examination reveals a title defect that can be remedied by legal action or otherwise within a reasonable time, Seller, at his/her expense, shall promptly take such action as is necessary to cure such defect. If the defect is not cured within thirty (30) days after Seller receives notice of the defect, then either party may terminate this Agreement at the expiration of such thirty (30) day period by written notice to the other party. Upon termination of this Agreement, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. The parties agree that the settlement date prescribed in Paragraph 9 shall be extended if necessary to enable Seller to cure any title defect, but not for more than thirty (30) days, time being of the essence.

**C. LAND USE ASSESSMENT:** In the event the Property is taxed under land use assessment and this sale results in disqualification from land use eligibility, Seller shall pay any rollback taxes assessed. If the Property continues to be eligible for land use assessment, Purchaser agrees to make application at Purchaser's expense for continuation under land use, and to pay any rollback taxes resulting from failure to file or to qualify. Notwithstanding anything herein to the contrary, the provisions of this Paragraph C shall survive settlement and the delivery of the deed.

**D. RISK OF LOSS:** All risk of loss or damage to the Property by fire, windstorm, casualty or other cause is assumed by Seller until settlement. In the event of substantial loss or damage to the Property before settlement, Purchaser shall have the option of either (i) terminating this Agreement, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder, or (ii) affirming this Agreement, in which event Seller shall assign to Purchaser all of Seller's rights under any policies of insurance applicable to the Property.

**E. EQUIPMENT CONDITION AND INSPECTION:** Seller shall convey and Purchaser agrees to accept the Property at settlement in its physical condition at the time the Date of Ratification, except as otherwise provided herein. Seller warrants that all appliances, heating and cooling equipment, plumbing systems and electrical systems will be in working order at the time of Settlement or at Purchaser's occupancy, whichever occurs first. Seller agrees to deliver the Property in broom-clean condition and to exercise reasonable and ordinary care in the maintenance and upkeep of the Property between the date this Agreement is executed by Seller and Settlement or at Purchaser's occupancy, whichever occurs first. Seller grants to Purchaser or his representatives the right to make a pre-occupancy or pre-settlement inspection to verify that the condition of the Property conforms to this Agreement and to ensure that repairs, if any, have been completed.

**\*F. WELL, SEPTIC OR MUNICIPAL SYSTEMS:** The Property is served by **[select one]:** ☐ a well  OR ☒ municipal water system.  The Property is served by **[select one]:** ☐ a septic system  OR ☒ municipal sewage system. If one or more municipal systems is selected and it is determined prior to settlement by the municipality or a Virginia licensed contractor that the Property is not served by such system(s), then Purchaser shall provide the written determination to Seller.  The parties may negotiate the connection of such system(s) upon mutually agreeable terms or within five (5) days following receipt of such determination, Purchaser may terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder.  If Purchaser does not terminate this Agreement within the said five (5) day period, then Purchaser's right to terminate this Agreement under this paragraph is waived.  Nothing herein shall be construed to limit Purchaser's remedies if no determination is made prior to settlement.

If the Property is served by a well and/or septic system, Seller agrees to furnish Purchaser with certificate dated not more than thirty (30) days prior to settlement from a Virginia Department of General Services certified laboratory

This form was produced by Cameo McFarlin. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.


TRANSACTIONS
TransactionDesk Edition

indicating that the well water is free from contamination by coliform bacteria and that there is no evidence of malfunction of the septic system. If Purchaser obtains a VA loan, the well water shall also be tested by Seller and certified as being free from lead contamination. Inspection of the septic system shall include **[check all applicable boxes]**:
- ☐ visual inspection of drainfield surface with rod probing
- ☐ pump contents and visual inspection of distribution box and all tanks
- ☐ other (describe): _____
- ☐ inspection per manufacturer's guidelines of alternative septic system.

If well water contamination and/or septic system malfunctions are found, Seller shall repair all malfunctions and correct the well contamination at Seller's expense. Subject to the limitation set forth in Paragraph H below, if Seller fails to comply with any provision of this paragraph, then Purchaser may: (i) utilize the remedies set forth in Paragraph 17; (ii) accept the Property in its current condition; or (iii) terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

**\*G. WOOD INFESTATION:** Seller shall furnish Purchaser with an inspection report dated not more than thirty (30) days prior to settlement from a Virginia licensed termite control company concerning the presence of, or damage from, termites or other wood destroying insects. If the inspection reveals active infestation or damage caused by wood destroying insects, whether past or present, to the (i) primary dwelling, (ii) any other dwelling(s) on the Property with a valid certificate of occupancy, and (iii) the following additional structures _____
_____ Seller shall have the affected area treated and have the damage repaired by a reputable company. The treatment company shall furnish a one-year warranty on such treatment. Subject to the limitation imposed by Paragraph H below, if Seller fails to comply with any provision of this paragraph, Purchaser may: (i) utilize the remedies set forth in Paragraph 17; (ii) accept the Property in its current condition; or (iii) terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

**\*H. LIMITATION:** If the total costs of fulfilling Seller's repair or treatment obligations set forth in Paragraphs F and G above exceeds $_____ ("Repair Limit"), then Seller shall have the option to: (i) fulfill Seller's obligations set forth herein; or (ii) pay or credit the Repair Limit to Purchaser and refuse to pay any excess of the Repair Limit. If Seller elects option (ii), Purchaser shall have the right to either accept the Property in its present condition (in which case the Seller shall pay or credit the Repair Limit to Purchaser at settlement), or to terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder. If no Repair Limit is entered in this paragraph, the parties agree that the amount shall be $1,000.00. The Repair Limit is independent of any obligations agreed to by Seller pursuant to Paragraph 16 or any inspection/repair addendum.

**\*I. VA/FHA Loans:** If a VA or FHA loan is selected in Paragraph 4, it is expressly agreed that notwithstanding any other provisions of this Agreement, Purchaser shall not be obligated to complete the purchase of the Property or incur any penalty by forfeiture of earnest money deposits or otherwise unless Purchaser has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner, Veterans Administration, or a direct endorsement lender setting forth the appraised value of the Property of not less than the Purchase Price. Purchaser shall have the privilege and option of proceeding with consummation of this Agreement without regard to the amount of the appraised value. The appraised value is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. Purchaser should satisfy himself/herself that the price and condition of the Property are acceptable.

**J. MECHANIC'S LIEN DISCLOSURE:** Virginia law (§43-1 et seq.) permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the Property. This lien may be filed at any time after the work is commenced or the material is furnished, within 90 days from the last day of the month in which the lienor last performed work or furnished materials or 90 days from the time the construction, removal, repair or improvement is terminated. **An effective lien for work performed prior to the date of settlement may be filed after settlement. Legal counsel should be consulted.** Seller shall deliver to Purchaser at settlement an affidavit in a form acceptable to Purchaser's title company, signed by Seller, that no labor or materials have been furnished to the Property within the statutory period for the filing of mechanics' or materialmens' liens against the Property. If labor or materials have been furnished to the Property during the statutory period, Seller shall deliver to Purchaser an affidavit signed by Seller and the person(s) furnishing the labor and/or materials that such items have been paid.

CVR 335                              Page 8 of 10                              Revised 7/2021

This form was produced by Cameo McFarlin. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

TRANSACTIONS
TransactionDesk Edition

**K. NONBINDING MEDIATION:** Unless waived by mutual agreement of the parties, any disputes or claims arising out of this Agreement (except matters involving mechanics liens or licensing) shall be submitted to mediation prior to instituting arbitration or litigation. The cost of mediation will be shared equally between Purchaser and Seller. The mediation shall be non-binding, unless a satisfactory settlement has been reached. Thus, if no settlement is reached, the parties are not bound by the mediation and may pursue any course of action. If a settlement is reached, it shall be binding upon the parties. The mediation shall be provided by a mutually agreeable mediator. Judicial actions to provide provisional remedies, such as an injunction or a lis pendens, shall not be prohibited by the agreement to mediate, nor shall it waive a party's right to mediate.

**L. MISCELLANEOUS:** This Agreement represents the entire agreement between Seller and Purchaser and may not be modified or changed except by written instrument executed by the parties. This Agreement shall be construed according to the laws of the Commonwealth of Virginia and shall be binding upon and shall inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties. To the extent any handwritten or typewritten terms herein conflict with, or are inconsistent with the pre-printed terms hereof, the handwritten or typewritten terms shall control. This Agreement may only be assigned by Purchaser with the written consent of the Seller. If the Seller agrees in writing to an assignment of this Agreement, Purchaser shall remain obligated hereunder until settlement. The parties agree that faxed or electronic transmission of any signed original document shall have the same effect as an original. As used in this Agreement, a "day" shall mean a calendar day unless otherwise noted. For the purpose of computing time periods, the first day shall be the day following the commencement of a time period. This Agreement may be signed in one or more counterparts, each of which is deemed to be an original and all of which shall together constitute the same instrument. No party will refuse delivery of any notice from the other party in order to hinder or delay any deadline established in this Agreement. **Unless otherwise provided herein, the provisions of this Agreement affecting title shall be deemed merged into the deed delivered at settlement and shall not survive settlement.**

**25. SELLER REPRESENTATION:** Seller warrants each person signing this Agreement as Seller includes all persons possessing an ownership interest in the Property or who will be a necessary party to convey clear title to the Property.

**26. ELECTRONIC SIGNATURES.** In accordance with the Uniform Electronic Transactions Act (UETA) regarding electronic signatures and transactions, the parties do hereby expressly authorize and agree to the use of electronic (such as Authentisign) signatures as an additional method of signing and/or initialing this Agreement.

**\*27. ACCEPTANCE:** This Agreement becomes a legally binding agreement only upon ratification and delivery. Unless ratification and delivery of this Agreement occurs by __12:00__ ☐ a.m. or ☒ p.m. on __November 22nd__, 20__21__, **this offer shall expire and shall not be binding on either party**. If the parties desire to accept an offer that has expired, then (i) the date set forth in this paragraph 27 must be revised to the ratification date (or later), (ii) each party must initial such revision, and (iii) ratification and delivery must occur prior to the revised expiration date.

As used herein, "ratification and delivery" means delivery of a final accepted and signed Agreement to the other party or their respective broker or salesperson by hand delivery, fax or electronic transmission, or by a professional courier service (including overnight delivery service) or by United States mail with return receipt requested. In the event of a dispute, the sender shall have the burden to demonstrate delivery to the recipient of the final accepted and signed Agreement. "Date of Ratification" means the date upon which ratification and delivery occurs. Purchaser and Seller understand that they shall have the right to withdraw any offer at any time prior to ratification and delivery. If either party withdraws an offer, notice shall be deemed effective upon receipt. If any offer is withdrawn, all deposits shall be returned to the Purchaser at no penalty.

WITNESS the following authorized signatures:

| *Melissa Pate* | 11/21/2021 | *Shauna Mcwilliams* | 11/21/2021 |
|---|---|---|---|
| Purchaser  Melissa Pate | Date | Seller  11/21/2021 4:46:08 PM EST  Shauna Mcwilliams | Date |
| Purchaser | Date | Seller | Date |
| Purchaser | Date | Seller | Date |

This form was produced by Cameo McFarlin. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

 TRANSACTIONS  TransactionDesk Edition

AuthentiSign ID: DAB68F61-B34B-4620-BDCB-EA6E510FDB1B

*The following is for informational purposes only:*

| **Selling Broker Company's Name and Address** | **Listing Company's Name and address** |
|---|---|
| Hometown Realty | Keller Williams Realty |
| 10001 Courtview Lane | 6806 Paragon Place, Ste. 300 |
| Chesterfield    VA    23832 | Richmond    VA    23230 |

Office Phone ____(804) 796-9400____          Office Phone ____(804) 282-5901____
Office Fax ____(804) 729-3530____              Office Fax ____(804) 282-5910____
DPOR Firm License No.: ____226019819____      DPOR Firm License No.: ____226018746____

Purchaser's Authorized Agent's Information:        Seller's Authorized Agent's Information:
Name ____Cameo McFarlin____                    Name ____Ayannah Edwards____
Email ____cameom@gohtr.com____                 Email ____ayannahedwards@yahoo.com____
Cell No. ____                                  Cell No. ____
Agent's DPOR License No.: ____0225246762____   Agent's DPOR License No.: ____0225248929____

COPYRIGHT©2021 by the Central Virginia Regional MLS, LLC ("CVR MLS"). All rights reserved. This form may be used only by members in good standing of the CVR MLS. The reproduction of this form, in whole or in part, or the use of the names "Central Virginia Regional MLS" or "CVR MLS", in connection with any other form, is prohibited without prior written consent of CVR MLS.

This form was produced by Cameo McFarlin. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

TRANSACTIONS
TransactionDesk Edition



# CENTRAL VIRGINIA REGIONAL MLS
## "AS IS" Addendum

This is a legally binding contract **to convey the property to Purchaser in "AS IS" condition.**
If not understood, seek competent advice before signing.

THIS IS AN ADDENDUM to the Purchase Agreement dated __November 19__, 20 __21__ (the "Purchase Agreement"), by and between __Shauna Mcwilliams__ ("Seller") and __Melissa Pate__ ("Purchaser") for the purchase and sale of certain real property known as __3818 Beechtree CT__ __NorthChesterfield__ __VA 23234__, Virginia (the "Property") and shall be attached to and made a part of the Purchase Agreement.

1. **Property Inspection for "AS IS" Transaction.** The Purchase Agreement is contingent upon Purchaser being satisfied with the results of an inspection of the Property. Seller grants Purchaser ten (10) days from the Date of Ratification as defined in Paragraph 27 of the Purchase Agreement (the "Inspection Period") to conduct such inspection of the Property as Purchaser deems necessary, including but not limited to, whole house inspection, well water, septic system, radon gas, lead-based paint and termite inspection. Seller shall have all utilities supplied to all systems prior to the inspection. If Seller fails to have all utilities supplied to all systems prior to Purchaser's inspection, then the expiration of the Inspection Period shall be extended until ten (10) days following the date that Purchaser is notified by Seller that all utilities have been supplied to all systems. If Purchaser is not satisfied with the results of Purchaser's inspections, Purchaser may terminate the Purchase Agreement by written notice to Seller within the Inspection Period. In such event and subject to Paragraph 8 of the Purchase Agreement, Purchaser's deposit shall be refunded to Purchaser and the parties shall have no further obligation under the Purchase Agreement. If Purchaser does not terminate the Purchase Agreement within the Inspection Period, then this contingency shall be deemed waived.

2. **Property Sold "AS IS".** The parties acknowledge that the Property is sold in **"AS IS"** condition as determined as of the date of the Purchase Agreement and Purchaser agrees to accept the Property at settlement in such condition. Excluding warranty of title, Seller makes no representation or warranty, express or implied, as to the condition of the Property or any system, equipment or appliance therein. All clauses regarding any repairs to the Property by Seller or any representations or warranties relating to the physical condition of the Property by Seller, including without limitation, paragraphs 16, 24E, 24F and 24G, are hereby deleted from the Purchase Agreement and are of no legal effect. **PURCHASER HEREBY ACKNOWLEDGES THAT SELLER WILL NOT PROVIDE A WELL WATER TEST, SEPTIC INSPECTION OR TERMITE REPORT AND SELLER HAS NO OBLIGATION TO MAKE REPAIRS TO THE PROPERTY OR ANY SYSTEM, EQUIPMENT OR APPLIANCE THEREIN, EXCEPT TO CONFORM THE PROPERTY TO THE CONDITION AS OF THE DATE OF THE PURCHASE AGREEMENT.** Seller grants to Purchaser the right to make a pre-settlement inspection to verify that the condition of the Property conforms to provisions of this paragraph. If, at or prior to settlement, Seller refuses to conform the Property to the condition as of the date of the Purchase Agreement (including the repair of any damage to the Property occurring after the date of the Purchase Agreement), then Purchaser may terminate the Purchase Agreement by written notice to Seller and receive a refund of the Deposit, or waive the Property condition and proceed to settlement with no reduction in the Purchase Price. If the Purchase Agreement is terminated and subject to Paragraph 8 of the Purchase Agreement, the Deposit shall be refunded to Purchaser and neither party shall have any further obligation thereunder.

3. Except as modified by this Addendum, all other terms and conditions of the Purchase Agreement are hereby ratified and reaffirmed.

WITNESS the following authorized signatures:

| *Melissa Pate* | 11/21/2021 | *Shauna Mcwilliams* | 11/21/2021 |
|---|---|---|---|
| Purchaser Melissa Pate | Date | Seller Shauna McWilliams | Date |
| Purchaser | Date | Seller | Date |
| Purchaser | Date | Seller | Date |

COPYRIGHT©2017 by the Central Virginia Regional MLS, LLC (CVR MLS). All rights reserved. This form may be used only by members in good standing of the CVR MLS. The reproduction of this form, in whole or in part, or the use of the names "Central Virginia Regional MLS" or "CVR MLS", in connection with any other form, is prohibited without prior written consent of CVR MLS.

CVR 120                                                                                                                                                                rev 08/17

This form was produced by Cameo McFarlin. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.                InstanetFORMS

American Freight
4100 Tomlynn St
Suite A
Richmond, VA 23230


Beechtree Property Owners Asso
210 Lawsons Dr
Clarksville, VA 23927


Blackburn Conte Schilling Clic
300 West Main St.
Richmond, VA 23220


Cashnet USA- Bankruptcy
175 W. Jackson Blvd.
Suite 1000
Chicago, IL 60604


CJW Medical Center
Attn: Bankruptcy
One Park Plaza
Nashville, TN 37203


Laboratory Corp of America
P.O. Box 2240
Burlington, NC 27216


Lendmark Financial Services
1735 North Brown Road
Suite 300
Lawrenceville, GA 30043


OSLA/Dept of Ed
Attn: Bankruptcy
Po Box 18475
Oklahoma City, OK 73154


Radius Global Solutions, LLC
P.O. Box 390846
Minneapolis, MN 55439


Rva Fin Fcu
Attn: Bankruptcy Dept
1700 Robin Hood Rd
Richmond, VA 23220

```
Suntrust Bank
Mailcode VA-RVW-6290
Po Box 8509
Richmond, VA 23286


Suntrust Bank
Attn: Bankruptcy
Mc Va-Rvw_6290 Pob 85092
Richmond, VA 23286


Verizon
Verizon Wireless Bk Admin
500 Technology Dr Ste 550
Weldon Springs, MO 63304
```